**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEANNE BRUNO | : | CIVIL ACTION NO. 3:01CV1501(MRK) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SONALYSTS, INC. | : | |
| Defendant. | : | DECEMBER 12, 2003 |

**DEFENDANT'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN**
**SUPPORT OF SUMMARY JUDGMENT**

I.   **INTRODUCTION**

In its memorandum of law in support of summary judgment, Sonalysts, Inc. ("Sonalysts") asserted that on August 31, 2000, Attorney Alice DeTora reported to Sonalysts that Attorney Susan Phillips told her that the plaintiff, Jeanne Bruno ("Bruno" or "the plaintiff") did not want to return to work at Sonalysts, but rather was interested in a monetary payment of her claims. This information, together with the plaintiff's previous representations that she did not want to work at the Media Center, led Sonalysts to conclude that the plaintiff had chosen to reject Sonalysts' offer to assign the plaintiff to different accounts and that she had resigned. Acting on that understanding, Sonalysts' president, Andrew Toriello, sent a letter to Bruno on September 1, 2000, advising her that Sonalysts considered her to have resigned.

II.   **Rule 408 Does Not Bar the Evidence Introduced by Sonalysts.**

The plaintiff does not dispute what Attorney DeTora told Sonalysts,[1] but claims that this evidence is not admissible pursuant to Rule 408 of the Federal Rules of Evidence. This argument misconstrues the purpose and scope of Rule 408. Rule 408 does not require the

---

[1] In plaintiff's Local Rule 56(a)(2) Statement, she stated "it is admitted that these facts, concerning what Sonalysts' lawyer told Sonalysts, rather than the truth of what Bruno's lawyer told Sonalysts' lawyer, are not in dispute." (Pl.'s Rule 56(a)(2) statement, ¶ 30.)

exclusion of evidence of settlement offers and discussions relating to settlement under all circumstances:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

### A. *Attorney DeTora's Statement to Sonalysts Was Not a "Statement Made in Compromise Negotiations."*

Rule 408 relates only to offers of settlement and statements made during settlement discussions. Unlike the situations in which Rule 408 is typically invoked, Sonalysts is not seeking to introduce evidence regarding the actual conversation between Attorney DeTora and Attorney Phillips. Instead, Sonalysts merely seeks to introduce evidence regarding the basis of Sonalysts' belief that the plaintiff had resigned, specifically, the conversation between Attorney DeTora and Mr. Toriello. Because Attorney DeTora's statement to Mr. Toriello was not "a statement made during a settlement discussion," Rule 408 does not apply.

### B. *Like Settlement Offers, Statements Made In Compromise Negotiations Are Not Excluded When Offered for "Another Purpose."*

Even assuming *arguendo* that Attorney DeTora's statement to Mr. Toriello is sufficiently linked to her conversation with Attorney Phillips as to constitute evidence of statements made in a settlement discussion, Rule 408 does not bar its admission into evidence. Pursuant to Rule 408, evidence of both settlement offers **and** statements made in compromise negotiations is to be

excluded only when such evidence is offered for the purpose of proving liability or the invalidity of a claim, and is admissible when offered for another purpose.

Several highly-respected treatises confirm that the scope of this exclusion does not depend upon whether the evidence in dispute is an offer of settlement or a statement made during settlement negotiations. The explanation of Rule 408 in Federal Procedure, Lawyers Edition makes clear that "FRE 408 does not require the exclusion of compromise or offers of compromise if the evidence is offered to prove a consequential material fact at issue. Moreover, evidence of statements made in the course of settlement negotiations will be admitted even if offered for a purpose other than one of the purposes specifically named in FRE 408." 12 Fed Proc, L Ed § 33:264. Similarly, in its discussion of "another purpose" provision of Rule 408, Weinstein's Federal Evidence makes no distinction between offers of settlement and statements made during settlement discussions. J. McLaughlin, J. Weinstein & M. Berger, Weinstein's Federal Evidence, (2d Ed.) § 408.08. Likewise, the American Law Reports' Annotation on Rule 408 does not differentiate between cases involving statements made during settlement negotiations and cases involving the actual offers of settlement. See Sonja A. Soehnel, *Evidence Involving Compromise of Offer of Compromise As Inadmissible Under Rule 408 of Federal Rules of Evidence*, 72 A.L.R. Fed. 409 (1993). See also Wright & Graham, Federal Prac. & Proc.: Evidence: § 5308. ("Evidence of offers or acceptance of compromise (and 'likewise' statements made in compromise negotiations) are only inadmissible 'to prove liability for or invalidity of the claim or its amount.' If offered for some other purpose, the evidence is admissible.")

Courts construing Rule 408 have also held that the explicit limitations on the exclusionary rule apply to statements made during settlement discussions, as well as the offers of

settlement. "Rule 408 explicitly allows for the use of settlement discussions at trial for certain purposes, including impeachment." Tribune Co. v. Purcigiotti, 1996 U.S. Dist. LEXIS 8433 at * 3 (S.D.N.Y. 1996). See also Lehman Bros. Commercial Corp. v. China Int'l United Petroleum & Chems., Co., 1995 U.S. Dist. LEXIS 8858, at * 6 (S.D.N.Y. 1995); Urico v. Parnell Oil Co., 708 F.2d 852, 854 (1st Cir. 1983) (admitting into evidence testimony which detailed settlement discussions).

  C. *Evidence Regarding Mr. Toriello's Belief that the Plaintiff Had Resigned Is Admissible as an "Other Purpose" Under Rule 408.*

Rule 408's exclusion of settlement material offered to prove liability is based on two concerns. First, it "reflects a fear that juries will infer an admission of liability from the mere fact that a party was willing to settle its claim." ESPN, Inc., v. Office of the C'mmr. of Baseball, 76 F. Supp. 2d 383, 411 (S.D.N.Y. 1999). Additionally, Rule 408 is intended to promote the public policy favoring compromise and settlement of disputes. Id., at 412. When settlement material is offered for other purposes, Rule 408 does not act as a bar. "According to its terms, Rule 408 does not exclude evidence of statements made in the course of settlement negotiations when that evidence is offered for a purpose other than proving the validity, invalidity or amount of the claim that gave rise to the settlement negotiations and, thus, the statements." United States v. Gonzalez, 748 F.2d 74, 78 (2d Cir. 1984).

Sonalysts has offered testimony that it believed the plaintiff resigned based, in part, upon Attorney DeTora's report that, according to Attorney Phillips, the plaintiff did not want to return to work at Sonalysts.[2] Sonalysts is not seeking to use this evidence as an admission by either party as to the validity, invalidity or amount of the plaintiff's claims; accordingly, Rule 408 does

---

[2] As described in Sonalysts' prior memoranda of law, Sonalysts also relied upon the plaintiff's failure to respond to its proposal regarding her return to work and the plaintiff's repeated statements that she did not want to return to the Media Center.

not bar the admissibility of this evidence. To the contrary, Sonalysts offers this evidence to show Andrew Toriello's state of mind when he wrote to the plaintiff advising her that Sonalysts considered her to have resigned.

Courts routinely consider evidence derived from settlement materials to be admissible when it is offered to show a party's state of mind. See, e.g., ESPN Inc., 76 F. Supp. 2d at 413 (statements made during settlement discussions are admissible to prove the party's motives); Baker v. Dorfman, 1999 U.S. Dist. LEXIS 4451, at * 6 (S.D.N.Y. 1999) (in a malpractice case, a letter containing a settlement offer was properly admitted into evidence to show the defendant attorney's state of mind at the time of his representation of the plaintiff).

In particular, courts have accepted evidence relating to settlement discussions as probative of whether a defendant had the intent to discriminate against a plaintiff. See Evans v. Troutman, 817 F.2d 104, 1987 U.S. App. LEXIS 5581, at * 7 (6th Cir. 1987) (defendant entitled to introduce settlement offer to rebut plaintiff's contention that it treated him differently from other employees); Safford v. St. Tammany Parish Fire Prot. Dist. No. 1, 2003 U.S. Dist. LEXIS 6513, at * 16 (E.D. La. 2003) (although plaintiff could not use consent decree entered into by employer to establish that the employer engaged in discriminatory activity against other employees, the consent decree was admissible to establish employer's intent to discriminate against the plaintiff); Thomas v. Resort Health Related Facility, 539 F. Supp. 630, 638 (E.D.N.Y. 1982) (evidence of settlement offer admissible to demonstrate that the plaintiff's loss of back pay was not attributable to defendant's discrimination); Dimino v. New York City Transit Auth., 64 F. Supp. 2d 136, 163 (E.D.N.Y. 1999) (evidence of settlement discussion admissible for purpose of establishing that defendant's non-discriminatory justifications for its actions were pretextual).

### D.  *Rule 408 Does Not Bar Evidence Relating to a Claim that Was Not the Subject of the Settlement Conversation.*

Moreover, even if the prohibition against using settlement materials to prove the validity of a claim could be stretched to include evidence demonstrating a lack of discriminatory intent, the evidence relating to one of the reasons for Sonalysts' belief that the plaintiff resigned is not barred by Rule 408. "Rule 408 prohibits the use of evidence relating to settlement negotiations 'to prove liability' of the claim which was attempting to be settled." Dimino, 64 F. Supp. 2d at 163. See also Carr v. Health Ins. Plan of Greater N.Y., Inc., 2001 U.S. Dist. LEXIS 6766, at * 13 (S.D.N.Y. 2001) ("If evidence is 'offered for another purpose' apart from liability for (or damages resulting from) the claim under settlement discussion, that evidence may be admitted.")

Thus, where the settlement discussion relates only to claim X, it is admissible as evidence relating to claim Y (even though it may be inadmissible to prove the validity of claim X). For example, the parties in Dimino v. New York City Transit Authority had engaged in settlement negotiations to resolve a dispute over the plaintiff's ability to return to work, pursuant to which the plaintiff was asked to sign a statement. The plaintiff later alleged that the defendant's conduct during the negotiations relating to that statement was motivated by a desire to retaliate against for her having filed an EEOC complaint. The court held that evidence regarding the settlement negotiations between the plaintiff and the defendant were admissible to support the plaintiff's retaliation claims because the negotiations were not intended to settle the retaliation claims. "Settlement negotiations involving the statement could not have been related to settlement of the retaliation claims. Therefore, Rule 408 does not exclude the use of evidence of the events surrounding the statement from consideration with regard to the retaliation claims." Dimino, 64 F. Supp. 2d at 163.

Similarly, in Greenwell v. Raytheon Aerospace, Inc., in connection with her claim for

retaliation, the plaintiff sought to introduce evidence relating to statements made by the defendant during a conversation regarding the possible settlement of the plaintiff's hostile work environment claim. The court held that Rule 408 did not render the statements inadmissible, noting that the defendant's "statements are being offered to support plaintiff's retaliation claim against him which was not even in existence at the time of the instant discussion." Greenwell v. Raytheon Aerospace, Inc., 1996 U.S. Dist. LEXIS 12559, at * 3, n. 1 (E.D. La. 1996). See also Carr, 2001 U.S. Dist. LEXIS 6766, at * 14-15 ("Even if the [defendants'] statements were offers of judgment, they are nonetheless admissible because they are being introduced not to prove liability for the claim being settled, but for an entirely separate claim of retaliation."); Torre v. Figgie Int'l, 1988 U.S. Dist. LEXIS 18313, at * 2 (E.D.Mo. 1988) (in plaintiff's age discrimination suit, evidence regarding offers to compromise a dispute over severance pay was not barred by Rule 408 because "Plaintiff's discharge and claim of age discrimination, however, arose subsequent to these compromise negotiations over severance pay, and therefore, did not concern the 'claim' specifically at issue before the jury.")

It is uncontested that the conversation between Attorney DeTora and Attorney Phillips occurred on August 31, 2000, the day **before** Sonalysts sent the letter to the plaintiff advising her that it considered her to have resigned. Because the plaintiff had not been "terminated" at the time of the conversation, whatever else may have been discussed during that conversation, the attorneys could not have discussed a resolution of any claims the plaintiff may have had a result of her so-called termination. Thus, even if Sonalysts would be barred from offering testimony regarding Attorney DeTora's report of that conversation to Sonalysts as evidence of its motives for restructuring the Mohegan account or offering the plaintiff other accounts, Rule 408 does not prohibit Sonalysts from offering it in connection with the plaintiff's claim that her termination

was discriminatory.

### III. Even If Sonalysts' Belief That Plaintiff Had Resigned Was Mistaken, It Is Sufficient to Justify Summary Judgment.

Contrary to the plaintiff's apparent belief, she cannot overcome summary judgment merely by proving that she did not intend to resign. Even if Sonalysts' belief that the plaintiff abandoned her job was mistaken, this belief constitutes a legitimate, non-discriminatory reason for its action, thus, its "termination" of the plaintiff does not violate Title VII or the FMLA. An employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Slatky v. Healthfirst, Inc., 2003 U.S. Dist. LEXIS 20608, at * 17 (S.D.N.Y. 2003), quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). See also Rodriguez v. American Friends of Hebrew Univ., Inc., 2000 U.S. Dist. LEXIS 18517, at * 18, n. 7 (S.D.N.Y. 2000) ("Strictly speaking, however, the issue is not plaintiff's actual job performance, but defendants' beliefs about her performance. An employer does not violate the law by making an erroneous evaluation of an employee."); Minton v. Lenox Hill Hosp., 160 F. Supp. 2d 687, 696 (S.D.N.Y. 2001) ("A defendant need only believe in good faith that the allegations against an employee are true, regardless of whether the allegations are true.")

More particularly, the plaintiff cannot fulfill her burden to demonstrate pretext, and thus overcome summary judgment, simply by proving that she did not resign. In Banez v. New York Foundling Hosp., a discrimination case in which the employer asserted that the plaintiff was terminated for poor job performance, the court explained why evidence that the employee's job performance was adequate was insufficient to withstand the employer's motion for summary judgment.

> [E]vidence that the asserted basis of the employer's action was factually erroneous is two steps removed from a finding of discrimination: the fact finder must first infer that if the employee was in fact competent, the employer likely knew that and is therefore lying about the reason for the adverse action (hardly a certain conclusion), and must then infer from the bad faith of the asserted rationale that the true reason was prohibited discrimination.

Banez v. New York Foundling Hosp., 2001 U.S. Dist. LEXIS 13883, at * 25 (S.D.N.Y. 2001), *aff'd* 2002 U.S. App. LEXIS 13345 (2d Cir. 2002). Granting summary judgment to the employer, the Banez court held that the plaintiff "creates an issue of fact about his actual job performance by denying that he did a poor job but presents no direct evidence that defendant did not believe he did a poor job, and thus very little basis for concluding that the proffered explanation was false, or for inferring a discriminatory animus." Id., at * 26. See also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000) (evidence that employer's explanation is false is insufficient to prove that the employer's true reason was discriminatory).

Likewise, the plaintiff cannot meet her burden of proof simply by arguing that a jury may not believe Sonalysts' articulated reason for terminating her employment. "Merely arguing that a jury might and legally could disbelieve such evidence is not sufficient to meet the nonmoving party's burden of opposing a properly supported summary judgment with affirmative evidence, since discredited testimony is not normally considered a sufficient basis for drawing the contrary conclusion." 27A Fed Proc L Ed. § 62:675. See also Lin v. N.Y. City Admin. for Children's Servs., 2003 U.S. Dist. LEXIS 14264, at * 29(S.D.N.Y. 2003) ("Plaintiff's only 'evidence' in the face of substantial evidence that defendants' actions were based on non-discriminatory bases, is in the form of flat denials of accusations such as that the various ALJ's reports were 'bias and arbitrary and capricious and erroneous,' or that ACS acted 'unlawfully and maliciously' Such conclusory statements – the legal equivalent of a playground "Is not! – cannot alone form a basis upon which a jury could find pretext.") Because the plaintiff has not offered – and cannot offer –

any concrete evidence that Sonalysts intended to retaliate against her, her claims must fail. Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148, 158 (D. Conn. 1997); St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747 (1993) ("The plaintiff at all times retains the ultimate burden of persuasion.")

### IV. Testimony from Attorney Phillips Regarding Her Conversation With Attorney DeTora Is Immaterial to the Issues in Dispute and Must Be Excluded.

The testimony that could potentially be offered by Attorney Phillips would not salvage the plaintiff's claims. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Because the only evidence that Attorney Phillips could offer relates to issues immaterial to the resolution of the plaintiff's claim, her testimony would not enable the plaintiff to overcome summary judgment.

The plaintiff has conceded that she does not dispute Sonalysts' claims regarding what Attorney DeTora reported to Sonalysts. (Pl.'s Rule 56(a)(2) statement, ¶ 30.) Indeed, Attorney Phillips was not present when Attorney DeTora spoke with Sonalysts, nor does she have any other basis for disputing Sonalysts' claims. Accordingly, Attorney Phillips cannot offer any evidence which would create a material issue of fact regarding what Sonalysts believed, much less what its motives were.

Attorney Phillips' potential testimony would be limited to stating whether or not she told Attorney DeTora that the plaintiff had no intention of returning to work at Sonalysts. This testimony would be relevant only if the question of whether the plaintiff actually resigned was necessary to the resolution of the plaintiff's claims. As discussed above, however, the question of whether or not the plaintiff actually intended to resign from Sonalysts is immaterial to the resolution of her claim that Sonalysts terminated her employment in violation of Title VII or the

FMLA. Like the plaintiff in Banez, although Attorney Phillips' testimony could possibly create an issue of fact about whether the plaintiff resigned, she could not present any direct evidence that Sonalysts did not believe that the plaintiff resigned, "and thus very little basis for concluding that the proffered explanation was false, or for inferring a discriminatory animus." Banez, 2001 U.S. Dist. LEXIS 13883, at * 26.

Moreover, Attorney Phillips' testimony is not necessary for the resolution of whether the statements are admissible under Rule 408. Unlike the common law rules of evidence, under Rule 408, the admissibility of statements made during settlement discussions depends upon the purpose for which they are offered as evidence, and not upon whether the statement was intended to be an admission of fact or a hypothetical statement. See Stephen A. Saltzburg, Michael M. Martin, Daniel J. Capra, 2 Federal Rules of Evidence Manual, §408.02[1], [2] (8th Ed. 2002); FRE 408, Advisory Committee Notes.

Because Attorney Phillips' potential testimony is irrelevant and immaterial to the actual issues in dispute, she ought not be permitted to testify.

V.  **Conclusion**

For the reasons set forth herein and in Sonalysts' moving papers, summary judgment should enter in favor of Sonalysts based upon the evidentiary record currently before the court.

DEFENDANT
SONALYSTS, INC.

By: *E. OB Choquette*
David A. Kulle (ct 00333)
dkulle@rc.com
Erin O'Brien Choquette (ct 18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## CERTIFICATION

This is to certify that a copy of the foregoing pleading was hand delivered to the following on the 12th day of December 2003:

Susan M. Phillips, Esq.
Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, P.C.
Two Union Plaza, Suite 200
P.O. Box 1591
New London, CT 06320

*E. OB Choquett*
Erin O'Brien Choquette