FILED

2005 JAN -5 P 1: 55

U.S. DISTRICT COURT
NEW HAVEN, CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JEANNE M. BRUNO * | |
|          Plaintiff * | CASE NO.: 3:01CV1501 (MRK) |
| vs. * | |
| * | |
| SONALYSTS, INC. * | |
| * | JANUARY 3, 2005 |
|          Defendants * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE TESTIMONY OF ALICE DETORA

**BACKGROUND**

The plaintiff in the above captioned matter, Jeanne M. Bruno, respectfully requests that the Court enter an order that Alice DeTora be precluded from testifying at the trial of the above captioned matter. The specific basis for this motion is that, in its Memorandum of Decision dated November 23, 2004, which concerned defendant's motion for summary judgment, the court made no provision for testimony from DeTora. In beginning her preparations for trial, Plaintiff seeks to clarify, for both parties, that this was in fact the court's intention.

**ANALYSIS**

In the November 23, 2004 Memorandum of Decision, the court indicated that reference could be made by defendant's termination decision maker, Andrew Toriello, as to his understanding of statements made by plaintiff's counsel in settlement negotiations in order to prove "Mr. Toriello's state of mind and not as evidence of the strength or weakness of Ms.

1

Bruno's claim." Memorandum of Decision at p. 19. The court further explained that it would "admit evidence of the actual conversations between Ms. DeTora and Ms. Phillips <u>only to the extent that Ms. Bruno wishes to do so</u> to rebut Mr. Toriello's explanation of his actions." <u>Id</u>. at p. 20 (emphasis supplied). From this discussion, the plaintiff understands that the Court is opening the door only to <u>testimony on behalf of the plaintiff</u> from Ms. Phillips, and that it does not intend to allow the defendant to offer testimony of the actual settlement conversations, even if it believes that it could offer testimony from Ms. DeTora that might serve to contradict Ms. Phillips' testimony.

If plaintiff has misconstrued the court's Memorandum of Decision dated November 23, 2004, and the court declines to grant this motion in limine, the plaintiff respectfully requests that consideration be given to the possible need to disqualify the law firm of Robinson & Cole from continuing to represent the defendant pursuant to Rules 3.7, 1.7 and 1.10 of Connecticut's Rules of Professional Conduct.[1] The plaintiff's concern is that if the door is left open for Ms. DeTora to testify, her own interests, and thus Robinson & Cole's interests, materially limit Robinson & Cole's ability to give impartial and unbiased advice to defendant concerning whether DeTora should in fact testify.

The general rule concerning lawyers as witnesses is that a lawyer representing a client in a trial may not also testify as to disputed facts. See Rule 3.7 (a) of the Rules of Professional

---

[1] The Connecticut District Court has adopted the Connecticut Rules of Professional Conduct as the standard of professional conduct expected of lawyers practicing with the District. <u>MMR/Wallace Power & Industrial, Inc. v. Thames Associates</u>, 762 F. Supp. 712, 717-18 (1991).

2

Conduct. Rule 3.7 does allow for a lawyer acting as an advocate in a trial where another lawyer in the same firm is likely to be called as a witness "unless precluded from doing so by Rule 1.7 or Rule 1.9." See Rule 3.7 (b). Rule 1.7 of the Rules of Professional Conduct concerns general conflicts of interest. At subsection (b) it states:"[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client, or to a third person, or by the lawyer's own interests." (Emphasis supplied.) Rule 1.10 requires that a firm not represent a client when any single lawyer at that firm would be precluded from doing so pursuant to, *inter alia,* Rule 1.7.

In a Connecticut Superior Court case, where a motion to disqualify the defendant's law firm was based on the likelihood that the propriety of the conduct of two lawyers associated with that firm would be a central issue in the trial of the case, Judge Aurigemma determined that disqualification was necessary. See Times Fiber Communications, Inc. v. Trilogy Communications, Inc., 1996 Westlaw 698016, Docket No. CV 950552603S (Attached as Exhibit A). Citing to the commentary to Rule 1.7, Judge Aurigemma explained: "Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. . . . A possible conflict does not itself preclude representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that

3

reasonably should be pursued on behalf of the client . . . . If the probity of the lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Id. citing commentary to Rule 1.7 of the Rules of Professional Conduct.

If the Court, in its Memorandum of Decision dated November 23, 2004 did not intend to foreclose the possibility of the defendant offering Alice DeTora as a witness, Robinson & Cole will be required to give its client detached advice on the question of whether Alice DeTora should testify at trial to rebut testimony by Susan Phillips concerning what actually occurred during settlement negotiations. Robinson & Cole will not be able to give Sonalysts detached advice on this question, because Ms. DeTora's testimony will inevitably be damaging either to herself and her law firm or to her client.

To present one possible way in which the conflict might play itself out, it seems clear that the testimony most consistent with Ms. DeTora having acted in accord with generally accepted professional protocol concerning the communication and use of statements made in settlement negotiations (i.e. communicating that it would be dangerous to rely on such statements as a sole legitimate non-discriminatory reason for termination) would be harmful to Sonalysts. The testimony most helpful to Sonalysts would involve Ms. DeTora casting herself, and therefore her firm, in a poor light (i.e. indicating that she supported her client's actions and believed he was justified in taking adverse action against plaintiff based on statements she believed had been made in settlement negotiations).

4

Robinson & Cole's conflict becomes even starker when the question is raised as to what Alice DeTora did upon receiving information from plaintiff's counsel that her client's purported understanding of what had transpired in settlement negotiations, was incorrect. See Letter to Alice DeTora from Susan M. Phillips dated September 8, 2000 and attached as Exhibit B. The testimony from DeTora that would most help the defendant would be that she did not share the letter with her client and/or told her client it was still reasonable to rely on the statements Ms. Phillips was now saying had been misconstrued. This testimony would not cast her or her law firm in the best light. The testimony from DeTora that would be most consistent with generally accepted professional protocol would be that she cautioned her client that this letter might be enough to cause a jury not to believe he had a legitimate non-discriminatory reason to terminate plaintiff.

The competing interests of Sonalysts and the law firm of Robinson & Cole are obvious. Sonalysts has an interest in having its lawyer support the legitimacy of its purported reason for termination, whereas Robinson & Cole has an interest in not being perceived by its client base, the bench and the bar as having given its client poor guidance. If the Court does not foreclose the possibility of Ms. DeTora testifying by granting this Motion in Limine, Robinson & Cole has a conflict of interest as described by Rule 1.7 of the Rules of Professional Conduct, that would disqualify it from representing Sonalysts while it makes the decision whether Ms, DeTora testifies.

**CONCLUSION**

For all the foregoing reasons, the Plaintiff's Motion in Limine to Preclude Testimony of Alice DeTora should be granted, or, in the alternative, the court should give consideration to the question of whether Robinson & Cole should be disqualified from representing the Defendant during the trial of the above captioned matter.

THE PLAINTIFF,
JEANNE M. BRUNO

By: /s/ Barbara E. Gardner
Barbara E. Gardner
Attorney at Law
843 Main Street, Suite 1-4
Manchester, CT 06040
Ph: (860) 643-5543
Fx: (860) 645-9554
Bg@bgardnerlaw.com
Fed Bar No. Ct07623

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage-prepaid, this 5th day of January, 2005, to the foregoing:

David A. Kulle
Erin O'Brien Choquette
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

_Barbara E. Gardner_
Barbara E. Gardner

Ex. A

## Westlaw.

Not Reported in A.2d
1996 WL 698016 (Conn.Super.)
(Cite as: 1996 WL 698016 (Conn.Super.))

Page 1

▷
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

TIMES FIBER COMMUNICATIONS, INC.
v.
TRILOGY COMMUNICATIONS, INC.

No. CV 950552603S.

Nov. 29, 1996.

Memorandum of Decision on Motion to Disqualify

AURIGEMMA, Judge.

*1 The plaintiff, Times Fiber Communications, Inc. ("Times Fiber") has moved to disqualify the law firm of Pennie & Edmonds, and Brian Siff, an attorney with that firm, from representing the defendant, Trilogy Communications, Inc. ("Trilogy"). The plaintiff has based its motion on §§ 3.7(b) and 1.7 of the Rules of Professional Conduct, and claims that the gravamen of this action is the improper conduct of lawyers in the firm of Pennie & Edmonds, those lawyers will be called as witnesses in the trial of this action, and since the probity of those lawyers' conduct is in serious question in this case, it will be difficult, if not impossible for Pennie & Edmonds to give Trilogy detached advice.

FACTUAL BACKGROUND

Trilogy was the defendant in a patent infringement action commenced by a company named Comm Scope, Inc. ("Comm Scope") in the United State District Court for the District of New Jersey. Times Fiber was not involved as a party in that action. Trilogy, Comm Scope and Times Fiber are all in the business of manufacturing coaxial cables.

In the Comm Scope action, Comm Scope and Trilogy, which was represented by Pennie & Edmonds, entered into a Protective Order which precluded the use of all discovery, including deposition testimony, for any purpose outside of the Comm Scope action and the disclosure of this information to anyone other than experts and others connected with the Comm Scope action.

Frederick Wilkenloh is Times Fiber's Director of Engineering. Mr. Wilkenloh is a former employee of Comm Scope. After Comm Scope and Trilogy had already reached an agreement to settle the Comm Scope action, Attorney Dale C. Hogue and Attorney Joseph V. Colaianni, both of the firm of Pennie & Edmonds, took the deposition of Mr. Wilkenloh. At the time the Motion to Disqualify was filed, Attorney Colaianni was a partner of Pennie & Edmonds and Attorney Hogue was a former associate of that law firm

Attorneys Hogue and Colaianni did not advise Wilkenloh about the fact that they had reached a settlement with Comm Scope. They also failed to advise him that their law firm had already opened a file on behalf of Trilogy for the purpose of commencing a patent infringement lawsuit against Times Fiber. They did advise him of the existence of the Protective Order in the Comm Scope action and assured him that his testimony would be subject to the terms of the Protective Order. At the deposition Attorney Colaianni about Times Fiber's manufacturing processes for coaxial cables and assured him that his testimony would be protected by the terms of the Protective Order.

In its complaint in this action Times Fiber alleges that the purpose of the Wilkenloh deposition was not to procure information relevant to the Comm Scope action, but rather to procure confidential information regarding Times Fiber's manufacturing processes for use against Times Fiber in a patent infringement suit which was subsequently commenced by Trilogy in the United States District

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1996 WL 698016 (Conn.Super.)
(Cite as: 1996 WL 698016 (Conn.Super.))

Page 3

The Comments to Rule 1.7 provide that Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical question are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client ... If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.

The lawyer's reasonable belief that a potential conflict with his own interests will not adversely affect his representation of the client is an objective, rather than a subjective belief. The Comment, Consultation and Consent, to Rule 1.7 provides: A client may consent to representation notwithstanding a conflict. However, as indicated in .... paragraph (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer cannot properly ask for such agreement or provide representation on the basis of the client's consent.

In this case the conduct of two attorneys while they were associated with the law firm of Pennie & Edmonds is *the primary wrongdoing* about which the plaintiff complains. Moreover, Trilogy has not denied that such conduct occurred. It has not denied that the deposition of Mr. Wilkenloh was taken by Attorneys Hogue and Colaianni. In its answer to the First Count of the Complaint Trilogy admits that "Counsel for Trilogy's time records demonstrate that Counsel for Trilogy opened a file for its anticipated lawsuit against Times Fiber prior to deposing Wilkenloh entitled 'Preparation for Litigation against Times Fiber, USA.' "

*4 Pennie & Edmonds cannot reasonably be expected to provide Trilogy with an unbiased assessment of the conduct of Attorneys Hogue and Colaianni in the Comm Scope action and Pennie & Edmonds' subsequent conduct in the Mississippi action. From an objective perspective Pennie & Edmonds' interest in justifying the actions that it took in the Mississippi and Comm Scope Actions will invariably cloud that law firm's ability to examine alternatives which may be available to Trilogy in this lawsuit. Pennie & Edmonds may well be faced with the choice of either implicating its own client as the driving force behind the conduct at issue, or exonerating its client from such conduct by claiming that Pennie & Edmonds engaged in it without Trilogy's knowledge or authorization.

The position of Pennie & Edmonds in this lawsuit vis-a-vis its own client is so egregiously untenable that it should never have considered entering its appearance for the client in the first place. For the foregoing reasons the Motion to Disqualify is granted.

1996 WL 698016 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B005580000...    12/31/2004

# SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.

ATTORNEYS-AT-LAW

THE COURTNEY BUILDING, 2 UNION PLAZA - SUITE 200
CORNER OF STATE STREET AND EUGENE O'NEILL DRIVE
P.O. BOX 1591, NEW LONDON, CT 06320
PHONE 860-442-4416 FACSIMILE 860-442-0495

James F. Brennan
S. Joel Suisman
Lawrence I. Greenberg
Thomas B. Wilson
Andrew Brand
John A. Collins, III
Jeffrey W. Hill
James P. Berryman
Harry E. Calmar
Matthew E. Auger
Michael A. Blanchard
Michael P. Carey
Raymond L. Baribeault, Jr
Robert B. Keville
Frank J. Liberty
Eileen C. Duggan
Hinda K. Kimmel
Jeanette M. Dostie
Robert G. Tukey
Morris I. Busca
Martin W. Schoepfer

In Memoriam
Max M. Shapiro
(1911-1992)
Louis C. Wool
(1911-1997)

Of Counsel
Charles Suisman
Louis Patrick Gray, III
Richard A. Schatz

September 8, 2000

Alice DeTora
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

    RE:    Jeanne Bruno

Dear Ms. DeTora:

I am writing to you in order to provide a response to Andrew N. Toriello's letter to Ms. Bruno dated September 1, 2000.

As we discussed on the phone on Tuesday, September 5, 2000, I take issue with your representations to Mr. Toriello that I represented to you that Ms. Bruno had no interest in returning to her position at Sonalyst. My understanding of our settlement negotiations, which occurred in person on August 25 and by phone on August 31, 2000, was that Sonalyst was prepared not to offer Ms. Bruno "her position" but a return to the Media Group in a position as had been outlined and discussed with Ms. Bruno in independent conversations with Muriel Hinkle and Lisa Mackey. Ms. Bruno does not believe that acceptance of the offered position would constitute "returning to her position" and does not have any interest in that position.

The wording of Mr. Toriello's letter suggests that Sonalyst views Ms. Bruno as having resigned from her position effective August 31, 2000, the date of my alleged representation to you. This is by no means true, as evinced by my follow up call to you on September 5, 2000 to ascertain what employment action Sonalyst would be taking and what the time frame for such action would be. In light of Mr. Toriello's letter, which cements Sonalysts' refusal to restore Ms. Bruno to her position, and its concomitant refusal to provide any other options for her return, she has no choice but to view herself as having been constructively discharged.

Sonalysts' actions, and the evident misunderstanding of my conversation with you, is further reflected by the absence of certain actions I has expected after our meeting of

Exh. B

Case 3:01-cv-01501-MRK   Document 80   Filed 01/05/2005   Page 11 of 11

AliceDeTora
September 8, 2000
Page 2

August 25. For example, I understood that I would be receiving a copy of Ms. Bruno's personnel file and that the FMLA issue would be addressed through correspondence from Sonalyst, formally requesting medical information, which I could then assist and advise Ms. Bruno in responding to. I have not received any personnel file(s) for Ms. Bruno, nor am I aware that any written request for medical information was sent to either my attention or Ms. Bruno's.

As a related matter, Mr. Toriello's letter, dated September 1, 2000, indicates that Ms. Bruno's health insurance coverage terminated effective August 31, 2000 although Ms. Bruno was given no notice of this event, and notice did not even issue from Sonalyst until September 1, 2000 and it was issued in such a manner as to preclude any knowledge of this event until September 5, 2000, at the earliest. This seems to be a clear breach of the implied covenant of good faith and fair dealing implicit in any employment contract, especially when notice could have been easily effectuated via telephone. In any event, Ms. Bruno will be electing to some continuation of her health insurance coverage and notice of her rights should be forwarded as soon as possible to allow for uninterrupted coverage.

Finally, Mr. Toriello's letter asks that Ms. Bruno contact Lisa Mackie to arrange for the return of any company equipment in Ms. Bruno's possession. Ms. Bruno is in the possession of a laptop computer which is the property of Sonalyst, but she would rather that the return to Sonalyst be handled through my office. I will notify you when I am in possession of this item (unless you instruct me to contact Lisa Makie directly) and you can instruct me as to whether someone will be sent from Sonalyst to pick it up or if I should send a messenger to Sonalyst.

Needless to say I am disappointed both by our failure to reach a reasonable resolution of Ms. Bruno's claims without resort to adversarial proceedings and by Sonalyst's precipitous actions in terminating Ms. Bruno's employment without notice to her or me. I hope we can work together more effectively in the future.

Sincerely,

Susan M. Phillips

SMP

cc: Jeanne Bruno